UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| MICHAEL BYRNE, | § | |
|     Plaintiff. | § | |
| | § | |
| v. | § | Civil Action No. DR-09-CA-058-AML-DGG |
| | § | |
| GEO GROUP, INC., | § | |
|     Defendant. | § | |

# DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BRIDGET ROBINSON
State Bar No. 17086800

WALSH, ANDERSON, BROWN
 GALLEGOS & GREEN, P.C.
P. O. Box 2156
Austin, Texas  78768
Office: (512) 454-6864
Fax:    (512) 467-9318
Email: brobinson@wabsa.com

ATTORNEYS FOR DEFENDANT

TO THE HONORABLE JUDGE OF THE COURT:

NOW COMES Defendant The GEO Group, Inc. ("GEO"), and files this Motion for Summary Judgment on Plaintiff's claims against it. In support thereof, GEO shows as follows.

## I. NATURE OF CASE AND PROCEEDING

On September 15, 2009, Plaintiff, a former GEO corrections officer, filed suit in district court in Val Verde County alleging that GEO discriminated and retaliated against him in violation of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12112 *et seq.*, and the Texas Commission on Human Rights Act, TEX. LAB. CODE ANN. § 21.051 (the "TCHRA").[1] Specifically, Plaintiff claims his supervisors discriminated against him because of his hearing impairment and that GEO retaliated against him for complaining of disability discrimination to the Equal Employment Opportunity Commission (the "EEOC"). GEO timely removed this case to federal court. (D.E. 1).[2]

## II. FACTUAL BACKGROUND

Pursuant to Local Rule CV-7 (c), the factual bases on which this Motion for Summary Judgment relies are included in the attached appendix and incorporated herein by reference.

## III. STANDARD OF REVIEW

In evaluating a motion for summary judgment, the court determines whether a genuine issue of material fact for trial exists and "whether reasonable jurors could find from a preponderance of the evidence that the plaintiff is entitled to a verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Summary judgment is proper when the pleadings, depositions, or other discovery

---

[1] The ADA and TCHRA are analogous, with parallel language. *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 285–86); *Rodriguez v. ConAgra Grocery Prods. Co.*, 436 F.3d 468, 473–74 (5th Cir. 2006). Accordingly, Texas state and federal courts "look to analogous federal precedent for guidance when interpreting the Texas Act." *Rodriguez*, 436 F.3d at 473–74 (citing *NME Hosps., Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999). Consequently, for simplicity, GEO refers only to the ADA herein because judgment on the ADA claim mandates judgment on the state law cause of action as well.

[2] The designation "D.E." herein refers to the Court's docket entries in this case.

show no genuine issue of material fact exists. FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact in its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the movant so demonstrates, "the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. The non-movant may not rest upon allegations in his pleading but "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256. Mere conclusory allegations are not competent summary judgment evidence and are insufficient to defeat a summary judgment motion. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Similarly, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). While the court must view the evidence and inferences in the light most favorable to the non-movant, summary judgment should be granted when "critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the non-movant, or where it is so overwhelming that it mandates judgment in favor of the movant." *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993).

### IV. PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* CASE OF DISCRIMINATION BASED ON DISABILITY

Plaintiff claims GEO discriminated against him based on his hearing impairment and ultimately terminated him, "at least in part," because of his disability. (Pl.'s Orig. Pet., ¶¶ 12, 13). The ADA prohibits employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a *prima facie* case of disability discrimination under the ADA, a plaintiff must show he (1) suffers from a disability as

defined by the ADA; (2) is qualified for the job despite his disability; (3) was subjected to an adverse employment action because of his disability; and (4) was treated less favorably than non-disabled employees. *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279–80 (5th Cir. 2000). It is undisputed that Plaintiff's hearing impairment is a disability under the ADA. However, he cannot meet his burden of establishing the remaining three elements of his *prima facie* case.

**1.      Plaintiff cannot show that he was *qualified* for the job despite his disability**

The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Plaintiff repeatedly refused to perform an essential function of his position — working mandatory overtime. By Plaintiff's own account in his responses to his disciplinary charges, his refusals to work mandatory overtime related only to his personal childcare issues, *not his hearing impairment*. He never cited his disability or any alleged harassment or discrimination based on his disability as his reasons for refusing to work mandatory overtime. Instead, his refusals were based exclusively on his own personal childcare conflicts. (*See* Ex. 32, ¶ 9). As childcare obligations are not an ADA "disability," Plaintiff was not entitled to any accommodation regarding mandatory overtime, although the Facility did nonetheless gratuitously attempt to work with him.[3] (*See* Ex. 1, ¶¶ 10–11).

---

[3]      Regarding Plaintiff's hearing accommodations, although a covered employer must provide reasonable accommodations to the known physical limitations of an otherwise qualified disabled employee, the *employee has the burden* to request reasonable accommodations. *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007). Plaintiff *never requested accommodation* for his hearing impairment. He had an opportunity to request accommodation in GEO's Post-Employment Questionnaire, but he did not submit any request. (*See* Ex. 2). He further admits he "never requested" a hearing adapter but merely "mentioned it" to his supervisors and never made a formal request to GEO for an accommodation. (Ex. 3, p. 94, lines 3-12; p. 96, lines 10-14; p. 180, line 21 to p. 181, line 5). GEO did not learn of Plaintiff's alleged request for a hearing accommodation until it received his EEOC Charge in March 2008. (Ex. 32, ¶ 4). Upon this initial notice, GEO immediately ordered Plaintiff a headset, which he returned without explanation shortly after receipt. (Ex. 4; Ex. 32, ¶ 4). Plaintiff's admitted failure to request a reasonable accommodation before filing

Courts have classified overtime as an essential job function for certain positions in which employers can show a particular need for overtime availability.[4] GEO has compelling reasons for its classification of overtime as an essential function of a corrections officer position. GEO must adequately staff its prisons at all times despite frequent staff shortages due to unexpected absences, incidents, and varying inmate needs. (Ex. 1, ¶ 5). Staff shortages can create security risks, impair Facility operations, and violate GEO's contract with the U.S. Marshal Service and the County Sheriff's Department. (Ex. 1, ¶ 5). GEO's mandate to provide adequate staffing requires it to assign mandatory overtime duties to on-duty corrections officers when shortages occur. Its employee handbook, for which Plaintiff signed an acknowledgment of receipt, explicitly provides that mandatory overtime is an essential function of the job. (Ex. 5, ¶ 6). In addition, the corrections officer job description provides that officers must, *at a minimum*, be able to "work overtime as required" and work "up to sixteen (16) hours" within a rolling 24 hour period. (Ex. 6).

Plaintiff received at least *eight* disciplinary charges for repeatedly refusing to work mandatory overtime before GEO finally terminated his employment. (Ex. 33, ¶ 4). Pursuant to GEO's progressive discipline policy, Plaintiff first received counseling, verbal and written reprimands, and two suspensions without pay before termination. (Ex. 1, ¶¶ 8–9, 13–16, 18). Despite his clear awareness of GEO's overtime requirement, Plaintiff continued to refuse to work

---

his EEOC Charge precludes any complaint that GEO failed to provide one. *See Jenkins*, 487 F.3d at 315.

[4]   *See Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305-06 (11th Cir. 2000) (finding mandatory overtime essential function for electrical worker); *Tjernagel v. Gates Corp.*, 533 F.3d 666, 673 (8th Cir. 2008) (same for production plant worker); *Kellogg v. Union Pac. R.R. Co.*, 233 F.3d 1083, 1087-88 (8th Cir. 2000) (senior manager); *Tardie v. Rehab. Hosp. of R.I.*, 168 F.3d 358, 544 (1st Cir. 1999) (human resources director); *Zaborowski v. Sealwright Co.*, 2002 WL 1585521 (S.D.N.Y. July 9, 2002) (warehouse supervisor); *Dropinski v. Douglas County, Neb.*, 2001 WL 1580201 (D. Neb. Dec. 5, 2001) (snow plow operator); *Rios v. Ind. Bayer Corp.*, 965 F.Supp. 919, 923-24 (S.D. Tex.1997) (production technician).

mandatory overtime or provide alternate days on which he could work mandatory overtime, pursuant to an agreement whereby Warden Campbell had attempted in vain to work with him. (Ex. 1, ¶¶ 10–11). Because he repeatedly refused to perform an essential function of his job, Plaintiff cannot show that he was qualified for a corrections officer position.

**2.      Plaintiff cannot establish that his disability *caused* his termination**

Although termination is an adverse employment action, Plaintiff cannot show that GEO terminated his employment *because of* his disability. As addressed in its Appendix and Statement of Facts, incorporated herein, GEO produced abundant summary judgment evidence supporting its termination decision, including Plaintiff's extensive disciplinary history, GEO's mandatory overtime and disciplinary policies, GEO's corrections officer job description that addresses the overtime requirement, GEO's employee handbook, and GEO's disciplinary actions against other officers who refused to work mandatory overtime. Plaintiff's baseless attribution of his hearing disability to GEO's termination of his employment despite his refusal to comply with its policies relies on the logical fallacy of *post hoc, ergo propter hoc*[5] — that because his hearing impairment preceded his termination, it must have caused it. However, he can produce *no evidence*, beyond mere speculation, to support this claim, entitling GEO to summary judgment. *See Forsyth*, 19 F.3d at 1533.

Moreover, the "same actor" inference applies, which defeats Plaintiff's claims. Because GEO hired Plaintiff with full knowledge of his hearing impairment (Ex. 9, p. GEO-357), it is presumed that GEO did not have discriminatory intent and did not terminate Plaintiff due to his hearing impairment. *See Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir.1996). In the case *sub judice*, Plaintiff has insufficient admissible, probative evidence to prove that GEO's decisions were

---

[5]      *Post hoc, ergo propter hoc* translates from Latin as, "After this, therefore because of this."

made because of his disability or in retaliation, or that its explanations were merely pretext. *See Nichols v. Grocer*, 138 F.3d 563, 566 (5th Cir. 1998) ("An employer's reason cannot be shown to be a 'pretext for discrimination' unless the plaintiff introduces some evidence, whether circumstantial or direct, that permits the jury to believe that the reason was false and that illegal discrimination was the actual reason."). *See also Ellison v. Darden Restaurants, Inc.*, 52 F.Supp.2d 747, 752 (S. D. Miss. 1999) (plaintiff failed to produce "evidence from which the jury [could] reasonably reject the employer's explanation and from which the jury [could] find that the employer's reason was mere pretext for discrimination.").

### 3. Plaintiff cannot show that he was treated less favorably than non-disabled officers

*All* corrections officers are subject to GEO's mandatory overtime requirement. (Ex. 1, ¶ 5; Ex. 32, ¶ 6; Ex. 33, ¶ 5). Corrections officers have clear notice of the overtime requirement through GEO's job description for corrections officers and its Employee Handbooks. (Ex. 1, ¶ 5; Ex. 33, ¶ 3). GEO regularly disciplines officers who refuse to work mandatory overtime. In fact, more than 100 disciplinary charges resulting in disciplinary action were written against corrections officers other than Plaintiff in the period between Plaintiff's first and last disciplinary charges for this offense. (Ex. 1, ¶ 19; Ex. 32, ¶ 10; Ex. 33, ¶ 5). Although most officers remedy their conduct before their discipline progresses to termination, GEO does apply its progressive discipline policy, including eventual termination, to officers who, like Plaintiff, continue to refuse to work mandatory overtime despite prior discipline. (*See* Ex. 1, ¶¶ 8, 19–21; Ex. 32, ¶ 10; Ex. 33, ¶ 6).

Plaintiff's unsupported claim that "[o]ther employees had refused to work overtime and were not fired" (P.'s Orig. Pet., ¶ 1) fails to account for GEO's progressive discipline policy and Plaintiff's *eight* disciplinary charges for refusing to work mandatory overtime. (Ex. 33, ¶ 4). Notably, Plaintiff accrued his final six charges within a single calendar year, like Sandra Moreno, a non-disabled

corrections officer whose employment was also recommended for termination. (Ex. 1, ¶ 21). Although Plaintiff claims that Corrections Officer Jose Contreras received more favorable treatment than Plaintiff, the summary judgment evidence shows that Mr. Contreras was, like Plaintiff, subjected to GEO's progressive discipline but, unlike Plaintiff, remedied his conduct before termination. (Ex. 1, ¶ 19; Ex. 33, ¶ 5). In addition, Jose Gaitan, a Hispanic, non-disabled male corrections officer who refused to work mandatory overtime five times between August 2008 and March 2009 was also recommended for termination.[6] (Ex. 1, ¶ 20; Ex. 33, ¶ 7).

Although Plaintiff *claims* he was treated differently than his non-disabled co-workers based on his disability, he cannot produce evidence to support this claim. Rather, the evidence shows that his repeated refusals to work mandatory overtime alone caused his termination, in accordance with GEO's mandatory overtime and progressive discipline policies. As addressed above, other non-disabled officers were similarly disciplined. In fact, it would have been grossly unfair to other corrections officers if GEO had allowed Plaintiff to continue violating its mandatory overtime policy while requiring them to comply with it. (Ex. 1, ¶ 8; Ex. 33, ¶ 6). Plaintiff's failure to establish this element of his *prima facie* case entitles GEO to summary judgment.

## V. PLAINTIFF CANNOT SHOW DISABILITY-BASED HARASSMENT

Plaintiff claims that his supervisors made harassing comments to him regarding his hearing impairment. To assert his disability-based harassment claim against GEO, Plaintiff must show that (1) he belongs to a protected group, (2) he was subjected to unwelcome harassment, (3) the harassment was based on his disability, (4) the harassment affected a term, condition, or privilege

---

[6] Mr. Gaitan, who refused to work mandatory overtime because of an outside job schedule, received progressive discipline in the form of a verbal reprimand, written reprimand, one-day unpaid suspension, and three-day unpaid suspension before he was recommended for termination. (Ex. 33, ¶ 7). These disciplinary actions comprised Mr. Gaitan's sole disciplinary record. (Ex. 1, ¶ 20).

of his employment, and (5) his employer knew or should have known of the harassment and failed to take prompt remedial action. *Flowers v. So. Reg'l Physician Servs.*, 247 F.3d 229, 235–36 (5th Cir. 2001). The harassment must have been "'sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.'" *Flowers*, 247 F.3d at 236 (quoting *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 563 (5th Cir. 1998)). Courts examine several factors in considering abusive work environment claims, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or is a mere offensive utterance, and whether it unreasonably interferes with the plaintiff's work performance. *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999).

Assuming the truth of Plaintiff's allegations regarding Captains John Gwynne's and Guillermo Mijares's alleged comments about his hearing, Plaintiff still cannot demonstrate an abusive working environment—that is, he cannot show the alleged comments affected a term, condition, or privilege of his employment. Plaintiff performed his job duties appropriately (except for mandatory overtime, which related only to personal conflicts). Notably, on January 17, 2008, Captain Mijares gave Plaintiff a favorable performance evaluation, rating him "commendable" in all five evaluation areas. (Ex. 8). Plaintiff also received regular raises, although his numerous disciplinary actions for refusing to work mandatory overtime reduced his last raise. (Ex. 1, ¶ 17).

In addition, none of the alleged comments were threatening or severe. At most, they were infrequent, isolated utterances that did not alter the terms and conditions of Plaintiff's employment. In fact, Plaintiff admits that as soon as he spoke to Captain Gwynne about "picking on" him, Captain Gwynne immediately apologized, explaining that he had not meant to offend Plaintiff, and Plaintiff had no subsequent problems with Captain Gwynne. (Ex. 3, p. 98 line 16 to p. 100 line 11). When Deputy Warden Mark Scott met with Plaintiff in March 2008 regarding his complaints, Plaintiff

stated that Captain Mijares had not commented about his hearing in the preceding six months, showing considerable infrequency. (Ex. 32, ¶ 5).[7] Warden Scott advised Plaintiff that he, Warden Campbell, and Major Christopher Martinez had an open door policy and gave Plaintiff his work cell phone number so Plaintiff could quickly reach him if he had any problems. However, Plaintiff never contacted Warden Scott to discuss any subsequent problems. (Ex. 32, ¶ 5).

Significantly, Plaintiff cannot show GEO knew or should have known of any harassment but failed to take prompt remedial action to remedy it. He never submitted a formal or written complaint about alleged harassment under GEO's employee complaint policy. Although he incidentally mentioned alleged conduct by Captain Mijares and Lieutenant Cruz[8] when he met with Warden Campbell in February or early March 2008, he advised Warden Campbell that the issue had been resolved, and Warden Campbell considered it informally resolved. (Ex. 1, ¶ 25). Notwithstanding, Warden Campbell promptly met with Captain Mijares and Lieutenant Cruz to address the alleged conduct and ensure compliance with GEO's policies. (Ex. 1, ¶ 24).

## VI. PLAINTIFF CANNOT ESTABLISH A *PRIMA FACIE* RETALIATION CLAIM

Plaintiff claims GEO terminated his employment as retaliation for his complaining to the EEOC of disability-based harassment. (P.'s Orig. Pet., ¶¶ 16–17). The ADA prohibits employers from retaliating against an employee who asserts his rights under the ADA. 42 U.S.C. § 12203(a). To establish a *prima facie* case of unlawful ADA retaliation, a plaintiff must show (1) he was engaged in ADA-protected activity, (2) he was subjected to an adverse employment action, and (3) a causal link existed between his protected conduct and the adverse action. *Seaman v. CSPH, Inc.*,

---

[7] Plaintiff also advised Warden Campbell when they met in February or early March 2008 that the alleged incident with Captain Mijares occurred in 2007, approximately six months earlier. (Ex. 1, ¶ 22).

[8] Plaintiff complained that Lieutenant Cruz called him a "guero," which translates as "light skinned" and is unrelated to Plaintiff's ADA harassment claim.

179 F.3d 297, 301 (5th Cir. 1999).  If the plaintiff makes this showing, the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the adverse employment action.  *Id.* (citing *Sherrod v. Am. Airlines*, 1232 F.3d 1112 (5th Cir. 1998)).  If the employer produces such evidence, the burden shifts back to the employee to "adduce sufficient evidence that the proffered reasons is a pretext for retaliation," ultimately showing that "'but for' the protected activity, the adverse employment action would not have occurred."  *Id.*

Plaintiff cannot establish a causal connection between his EEOC complaint and termination.  Significantly, he submitted his initial Charge of Discrimination to the EEOC more than a year before his termination and after he had already received two disciplinary charges for refusal to work overtime.  After filing his initial Charge, Plaintiff *admits* he continued his refusals, which warranted discipline under GEO's progressive discipline policy.  Plaintiff cannot avoid merited disciplinary action by pointing to a prior—and remote—Charge of Discrimination and summarily attributing any subsequent discipline to it.  As addressed above, GEO has a compelling interest in requiring corrections officers to work mandatory overtime and disciplines officers who violate the policy under its progressive disciplinary policy.  Plaintiff continued to violate GEO's policy despite prior discipline and a written warning that he could be terminated.  He has no evidence to refute GEO's proffered legitimate, nondiscriminatory reason for his termination as mere pretext and certainly cannot meet the "but for" burden.  *See id.*  Accordingly, GEO is entitled to summary judgment.

### VII.  CONCLUSION

For the reasons above, GEO respectfully requests that the Court grant its Motion for Summary Judgment and enter a take nothing judgment against Plaintiff on all claims.

Respectfully submitted,

*/s/Bridget Robinson*
BRIDGET ROBINSON
State Bar No. 17086800

WALSH, ANDERSON, BROWN
 GALLEGOS & GREEN, P.C.
P. O. Box 2156
Austin, Texas  78768
Office: (512) 454-6864
Fax:    (512) 467-9318
Email: brobinson@wabsa.com

ATTORNEYS FOR DEFENDANT

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of September, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Michael V. Galo, Jr.
Galo Law Firm, P.C.
4230 Gardendale, Bldg. 410
San Antonio, Texas 78229

 */s/Bridget Robinson*
Bridget Robinson

- 11 -